UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRIAN RAE,

     Plaintiff,

v.                        CASE NO. 8:19-cv-2987-T-TGW

ANDREW M. SAUL,
Commissioner of Social Security,

     Defendant.

_____/

O R D E R

     The plaintiff in this case seeks judicial review of the denial of his claims for Social Security disability benefits and supplemental security income payments.[1]  Because the decision of the Commissioner of Social Security is supported by substantial evidence, and the plaintiff does not identify reversible error, the decision will be affirmed.

I.

     The plaintiff, who was thirty-eight years old at the time of the administrative hearing and who has a college degree, has worked as a teacher (Tr. 32, 203).  He filed a claim for Social Security disability benefits and

---

[1]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 14).

supplemental security income payments, alleging that he became disabled due to a stroke, depression, anxiety and OCD (obsessive compulsive disorder) (Tr. 242). The plaintiff's claim was denied initially and upon reconsideration.

The plaintiff, at his request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff has severe impairments of left median and ulnar nerve palsies; status-post cerebrovascular accident, with a residual cerebral anoxic injury and right-sided hemiplegia; scoliosis; cognitive disorder; depressive disorder; anxiety disorder and obsessive compulsive disorder (Tr. 24). The law judge concluded that, despite these impairments, the plaintiff has the residual functional capacity to perform a range of light work (Tr. 26). Specifically, the law judge determined that the plaintiff (id.)

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except he can only occasionally operate foot controls with the right lower extremity. The claimant can never climb ladders, ropes, or scaffolds and never crawl. He can occasionally climb ramps and stairs and occasionally balance, stoop, kneel, and crouch. The claimant can occasionally reach overhead with the right upper extremity, as well as frequently reach in all other directions with the right upper extremity. He can frequently handle

2

and finger bilaterally. The claimant must avoid concentrated exposure to excessive noise and excessive vibration. He must avoid all exposure to hazardous machinery, unprotected heights, and jobs that entail picking up or handling potentially hot objects. The claimant is also limited to occupations that do not require frequent verbal or written communications. He is further limited to simple, routine, repetitive tasks in a low-stress job (which is defined as having only occasional decisionmaking, only occasional changes in the work setting, and no production rate or pace work comparable to that of an assembly line, where one worker's pace affects the entire production process).

The law judge found further that, due to these limitations, the plaintiff could not perform past relevant work (Tr. 32). However, based upon the testimony of a vocational expert, the law judge concluded that light-work jobs existed in significant numbers in the national economy that the plaintiff could perform, such as mail clerk, office helper and collator operator; and sedentary jobs such as lens inserter, stone setter and stuffer (Tr. 33–34). Consequently, the law judge decided that the plaintiff was not disabled (Tr. 34).

The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner of Social Security.

3

II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en

4

banc).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied, and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff argues that the law judge failed to (1) include, or explain the rejection of, an opinion by two non-examining reviewing psychologists, (2) evaluate properly an opinion of consultative examiner Dr.

Donald McMurray, and (3) resolve purported inconsistencies between the vocational expert testimony and the DOT (Doc. 18).  Each contention is meritless.

      A.    Dr. Kevin Ragsdale and Dr. Michael Plasay, non-examining reviewing psychologists, stated in Mental Residual Functional Capacity assessment forms (MRFC) their opinions of the plaintiff's functioning (Tr. 250–52; 283–85).  They rated the degree of the plaintiff's limitations in 20 areas of mental functioning and detailed in narrative form the claimant's functional capacities in the four broad areas of mental functioning (see id.). The law judge found their opinions "most persuasive" (Tr. 32).

      The plaintiff argues that the law judge failed to include in the residual functional capacity, or explain the rejection of, the reviewers' opinion that the plaintiff is moderately limited in accepting instructions and responding appropriately to criticism from supervisors (Doc. 18, pp. 6–9). This argument fails for two reasons: (1) The notation of "moderately limited" does not accurately reflect the reviewers' opinion regarding the plaintiff's ability to accept instructions and criticism from supervisors; and (2) the law judge found that the plaintiff had only a mild — not moderate — limitation

in interacting with others.

In the first place, the plaintiff, in asserting this argument, fails to recognize the entirety of the reviewers' opinions contained in the MRFC. Thus, the reviewers' limitations ratings are followed by "the actual mental residual functional capacity assessment, [which] is recorded in the narrative discussion(s)" (Tr. 250, 283).

The Eleventh Circuit rejected an argument similar to the plaintiff's in Land v. Commissioner of Social Security, 494 Fed. Appx. 49 (11th Cir. 2012). Land argued that his residual functional capacity was deficient because it did not include the reviewers' opinion that he was moderately limited in his "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Id. at 49. The Eleventh Circuit explained that the reviewers opined further, in the narrative section of the MRFC, that Land retained the ability to do simple-type tasks, and that opinion was consistent with the law judge's RFC finding that the plaintiff could perform simple, routine, repetitive tasks. Id. at 49–50.

In this case, Dr. Ragsdale and Dr. Plasay elaborated in the narrative sections of the MRFC that, despite marking that the plaintiff had "moderate difficulties with the ability to accept instructions and responding appropriately to criticism from supervisors," the plaintiff

> is sufficiently capable of communicating about/seeking assistance with routine employment matters, accepting general feedback about his job performance, and behaving appropriately in the workplace.

(Tr. 252, 285). Both reviewers added that, "[n]otwithstanding the limitations deriving from cl[aimant's] mental disorder(s), the balance of the relevant evidence suggests cl[aimant] has the capacity ... to perform basic work activity within the parameters outlined herein" (id.). Consequently, the law judge's finding of the plaintiff's ability to perform "simple, routine, repetitive tasks in a low-stress job" (Tr. 26) is not a rejection of, but is consistent with, the RFC assessments by Dr. Ragsdale and Dr. Plasay (Tr. 252, 285). See Land v. Commissioner of Social Security, supra, 494 Fed. Appx. at 49; Timmons v. Commissioner of Social Security, 522 Fed. Appx. 897, 907 (11th Cir. 2013).

Moreover, the law judge did not accept the reviewers' assessment that the plaintiff was moderately limited in accepting instructions

8

and responding appropriately to criticism from supervisors.   Thus, in considering the four broad areas of mental functioning, the law judge found that the plaintiff had only a mild limitation in "interacting with others" (Tr. 25).  He explained that finding as follows (id.):

> The reports at Exhibits 6E and 7E offered little indication there were deficits in this domain. While this evidence characterized the claimant as a "quiet person" who was self-conscious about things, the reports also suggest the claimant was an individual who got along well with others.  He had never been fired or laid off in the past due to difficulties relating with other people (Exhibits 6E and 7E).  At hearing, the claimant admitted he traveled on more than one occasion since the amended alleged onset date of disability.  He noted that he participated in group discussions with others and showed almost no deficits from a social functioning standpoint.

This finding demonstrates why the law judge did not include in the residual functional capacity a moderate limitation in accepting instructions and responding appropriately to criticisms from supervisors.

It is noted on this issue that the plaintiff attempts to get some mileage from the law judge's comment that the reviewers' opinions were "most persuasive" (Doc. 18, pp. 6–7).  That comment does not carry the weight the plaintiff seeks to put on it.  In context, that statement merely indicates that it is more persuasive by comparison to the other opinions the

law judge assessed in that paragraph, which he found "less persuasive" (Tr. 32). It does not mean that the law judge found the reviewers' opinions "fully" persuasive. This is reflected in the statement that "[t]he treating source evidence since the State agency assessments show further improvements in health" (id.). In other words, the law judge discounted to some extent the opinions by the reviewers, as also shown by the law judge's findings regarding the category of "interacting with others."

Consequently, for these reasons the plaintiff's contention is meritless that the law judge erred by omitting from the residual functional capacity the reviewers' opinion that the plaintiff had moderate limitations in the ability to accept instructions and responding appropriately to criticism from supervisors.

B.   The plaintiff argues next that the law judge did not give adequate justification for rejecting Dr. Donald McMurray's opinion that the plaintiff has "mild" and "marked" limitations in his "ability to make judgments on simple work-related decision[s]" (Doc. 18, pp. 9–11).

This argument implicates the new regulations governing the assessment of medical opinion evidence. 20 C.F.R. 404.1520c. The regulations change established principles in the Eleventh Circuit concerning

10

the evaluation of medical opinions.

The regulations now state (20 C.F.R. 404.1520c(a)):

We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions(s) or prior administrative medical finding(s), including those from your medical sources.

Rather, medical opinions and prior administrative medical findings are to be considered for their persuasiveness based upon the following factors:

(1)   Supportability.
(2)   Consistency.
(3)   Relationship with the claimant [including]
        (i)    Length of the treatment relationship.
        (ii)   Frequency of examinations.
        (iii)  Purpose of the treatment relationship.
        (iv)   Extent of the treatment relationship.
        (v)    Examining relationship.
(4) Specialization.
(5) Other factors.

20 C.F.R. 404.1520c(c)(1)–(5).

Supportability and consistency are the two most important factors. 20 C.F.R. 404.1520c(a), 20 C.F.R. 404.1520c(b)(2). Indeed, law judges are not even required to explain how they considered factors 3 through 5, 20 C.F.R. 404.1520c(b)(2), unless the record contains differing, but equally persuasive, medical opinions or prior administrative medical findings about the same issue. 20 C.F.R. 404.1520c(b)(3).

11

"Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. 404.1520c(c)(1).

"Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. 404.1520c(c)(2).

On March 26, 2019, Dr. McMurray conducted a consultative psychological evaluation of the plaintiff (Tr. 1419–23) and completed a Medical Source Statement of Ability to do Work Related Activities (Tr. 52–54). Dr. McMurray marked in the Medical Source Statement that the plaintiff has "Extreme" limitations in the ability to understand and carry out complex instructions and checked boxes indicating that the plaintiff has "Mild" and "Marked" limitations regarding his "ability to make judgments on simple work-related decision[s]" (Tr. 52) (emphasis added).

12

The assessment that the plaintiff had both "mild" and "marked" limitations with respect to his ability to make judgments on simple work-related decisions makes no sense. The categories of "mild" and "marked" are distinct and mutually exclusive. The fact that Dr. McMurray checked those inconsistent categories undercuts the credibility of his assessments.

Nevertheless, the law judge accepted that the plaintiff had some limitation in this area, as the law judge limited the plaintiff to "only occasional decisionmaking [and] only occasional changes in the work setting" at a job comprised of "simple routine, repetitive tasks" (Tr. 26). However, the law judge found that Dr. McMurray's opinions of marked and extreme limitations were unpersuasive because they

> appear much too generous in light of the
> signs/findings recorded by [Dr. McMurray] on
> examination, and the collateral treating source
> records and the evidence of improved functioning
> in terms of the ability now to drive, travel, engage
> in conversations with others, etc.

(Tr. 32). Thus, the law judge rejected those opinions from Dr. McMurray on grounds of supportability and consistency, in accordance with the new regulations. See 20 C.F.R. 404.1520c(a)–(c); 416.920c(a)–(c) (2017). Furthermore, this determination is supported by substantial evidence.

13

Notably, the law judge identified medical records from the plaintiff's treating psychiatric sources that did not support Dr. McMurray's opinion that the plaintiff has markedly, or even moderately, impaired judgment. For example, the law judge pointed out that the plaintiff

> treat[ed] with Dr. McKinnon and social worker Roth throughout 2018 .... The claimant was typically "alert" and <u>exhibiting "good" judgment</u>. He was also usually "cooperative." Attention/concentration was "good," as was memory. The claimant also exhibited a "good" fund of knowledge (Exhibits 5F, 13F, and 15F).

(Tr. 29) (emphasis added).

Additionally, the law judge elaborated as to the plaintiff's daily functioning

> ... [that] the claimant is now apparently healthy enough to regain his driver's license ... and once again to safely operate a motor vehicle (Exhibits 7F and 8F). [H]e also testified at hearing he helps his infirm mother by taking her to the local drugstore to shop for necessities, from time to time. The claimant also admitted at hearing, as well as in a statement to Dr. Griswold at Exhibit 17F, that he works out at a local gymnasium several times a week. The claimant also admitted at hearing that he spent a lot of time on Facebook (<u>i.e.</u>, on a computer or similar device) .... The claimant also testified to meeting weekly with retired scholars or graduates of such institutions such as Tufts, MIT, etc., wherein he indicated they engage in intellectual, political discussions of

14

> current events or other intriguing subjects. Most
> notably, the claimant testified at hearing that he
> traveled to multiple theme parks in Orlando in
> December 2017, to New York via airplane for
> seven days in July 2018, to Cancun, Mexico via
> airplane for four to five days in November 2018,
> and to Steamboat Springs, Colorado via airplane
> for several days just a few months ago, in January
> 2019.[2]

Tr. 30–31; see Crow v. Commissioner, Social Security Administration, 571

Fed. Appx. 802, 806–07 (11th Cir. 2014) (It is appropriate for the law judge

to consider the consistency of the treating physician's opinion with the

plaintiff's daily activities.). Notably, the plaintiff does not mention, and

therefore he certainly does not undermine, either of these reasons for the law

judge's rejection of Dr. McMurray's opinion.

Moreover, the law judge specified several of Dr. McMurray's

evaluation findings that are inconsistent with a marked inability to make

judgments on simple work-related decisions (Tr. 29–30). The law judge

explained (id.):

> Donald A. McMurray, Ph.D., performed a recent
> consultative psychological examination, noting a
> lack of "energy, drive, or ambition." Yet, the
> claimant was also "calm, respectful, and he

---

[2]The plaintiff traveled by himself to several of those destinations (see Tr. 210–213). It is also noted that the plaintiff's ability to drive is, in itself, a strong indicator of the ability to make judgments on simple work-related decisions.

15

> engaged easily." He proved to be "cooperative."
> Hygiene and personal grooming were "good." He
> "provided a reasonable amount of information
> spontaneously and in response to direction
> questions." He appeared to function, at the very
> least, in the "low average range of intelligence."
> The claimant could "count, do calculations, and he
> had an adequate range of general information."
> Finally, and while Dr. McMurray characterized
> memory and attention/concentration skills as
> "impaired," he failed to elaborate any further
> (Exhibit 16F).

Notably, Dr. McMurray also expressly stated in the evaluation that the plaintiff's "impulse control, insight and judgment were adequate" (Tr. 1422) (emphasis added).

In sum, the law judge stated ample reasons, which are supported by substantial evidence, for rejecting Dr. McMurray's opinion that the plaintiff has more than a mild limitation in his ability to make judgments on simple work-related decisions. See Biestek v. Berryhill, __ U.S. __, 139 S.Ct. 1148, 1154 (2019) (Substantial evidence "means ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

The plaintiff argues that substantial evidence does not support the law judge's determination because several aspects of Dr. McMurray's evaluation support Dr. McMurray's opinion (Doc. 18, p. 11). In this regard,

16

the plaintiff states that

> Dr. McMurray specifically noted on the examination that the Plaintiff's short-term memory, attention, and concentration were impaired. (Tr. 1422). Dr. McMurray stated that the Plaintiff lacked energy, drive, or ambition. (Tr. 1422). The impaired short-term memory as well as attention and concentration specifically support Dr. McMurray's findings with regards to the mild to marked limitations with the ability to make judgments on simple work-related decisions. (Tr. 1424).[3]

The plaintiff's argument misapprehends the standard of review in Social Security cases, which is very deferential. It is insufficient for the plaintiff to cite evidence that is consistent with, or supports, Dr. McMurray's opinion; rather, the plaintiff must identify evidence that would compel the law judge to accept that opinion because the law judge's resolution of conflicting evidence is entitled to deference. See Adefemi v. Ashcroft, supra, 386 F.3d at 1027 ("findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a

---

[3]The plaintiff also states that Dr. McMurray opined that the plaintiff's memory and concentration are poor (Doc. 18, p. 11). Dr. McMurray did not offer that opinion in the evaluation. Rather, in the evaluation he stated, vaguely, that the plaintiff's memory and concentration were "impaired" (Tr. 1422).

17

reversal of the administrative findings"). Thus, "[e]ven if ... the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); see also Hunter v. Social Security Administration Commissioner, 808 F.3d 818, 823 (11th Cir. 2015) ("We will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it."). The plaintiff's evidence does not compel a contrary conclusion, especially considering that Dr. McMurray stated in the evaluation that the plaintiff's "judgment w[as] adequate" (Tr. 1422). Therefore, the law judge did not err in rejecting Dr. McMurray's opinion.

C.     The plaintiff's final argument is that the law judge "failed to discharge his duty to resolve apparent inconsistencies between the VE testimony and the DOT" (Doc. 18, p. 12). Specifically, the plaintiff argues that there are purported "inconsistencies with the reasoning levels and reaching requirements of the jobs the ALJ found the plaintiff could perform" (id.).

"[T]he ALJ has an affirmative obligation to identify any 'apparent' conflict and to resolve it. The failure to properly discharge this

18

duty means the ALJ's decision is not supported by substantial evidence." Washington v. Commissioner of Social Security, 906 F.3d 1353, 1362 (11th Cir. 2018). The law judge must ask the vocational expert to identify and explain any conflict between his testimony and the DOT." Id. at 1363. "At a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case." Id. at 1365.

1.      The law judge found, based on the testimony of the vocational expert, that jobs existed in significant numbers in the national economy that the plaintiff could perform, such as mail clerk, office helper and collator operator, lens inserter, stone setter and stuffer (Tr. 33–34). The plaintiff argues that there was an apparent inconsistency between his residual capacity for simple, routine, repetitive tasks, and the reasoning levels of several of these jobs (Doc. 18, p. 14). Specifically, the plaintiff identifies that the jobs of mail clerk, office helper, collator operator and stuffer have reasoning levels of 2 or 3, and he argues that "[j]obs with a Reasoning level of 2 or higher are inconsistent with the limitation to 'simple, routine, repetitive work'" (id.). This argument is unavailing.

As the Commissioner discusses in detail (Doc. 23, pp. 18–21), the Eleventh Circuit and several district courts have recently held that a reasoning level of 2 is not inconsistent with "simple, routine, repetitive" work.   See Valdez v. Commissioner of Social Security, 808 Fed. Appx. 1005, 1009 (11th Cir. 2020) (jobs with a reasoning level of 1 or 2 "are not" inconsistent with a residual functional capacity for simple, routine, repetitive tasks); see also Green v. Saul, No. 8:19-cv-2021-T-TGW, 2020 WL 5743185 at **8, 9 (M.D. Fla., Sept. 25, 2020) (discussing recent case law holding that a job with a reasoning level of two does not conflict with a limitation to simple, routine, repetitive tasks).[4]   Therefore, there is no apparent inconsistency between simple, routine, repetitive tasks and jobs with level 2 reasoning.

In all events, the Commissioner aptly points out (Doc. 23, p. 18) that the law judge identified other jobs available in significant numbers in the national economy that the plaintiff could perform, such as lens inserter and stone setter, which involve only level 1 reasoning.   Therefore, even

---

[4]The plaintiff devotes a considerable part of this argument to discussing the Fourth Circuit case of Pearson v. Colvin, 810 F.3d 204, 209 (11th Cir. 2015) (see Doc. 18, p. 15). However, the Fourth Circuit subsequently held that no apparent inconsistency exists between a limitation to "simple, routine repetitive tasks of unskilled work" and jobs with a reasoning level of 2. Lawrence v. Saul, 941 F.3d 140, 143 (4th Cir. 2019).

excluding the jobs with reasoning levels of 2 or 3, the law judge identified jobs that were available in significant numbers in the national economy that plaintiff could perform. Accordingly, if there were an inconsistency between the vocational expert's testimony and the DOT, the law judge's error is harmless. Wooten v. Commissioner of Social Security, 787 Fed. Appx. 671, 674 (11th Cir. 2019); Valdez v. Commissioner of Social Security, supra, 808 Fed. Appx. at 1009 (There is no need to consider an apparent conflict regarding jobs involving level 3 reasoning because the law judge also identified jobs with a reasoning level of 1.); see also Hunter v. Commissioner of Social Security, supra, 609 Fed. Appx. at 558 (To the extent that an administrative law judge commits an error, the error is harmless if it did not affect the judge's ultimate determination.). Therefore, this argument fails.

2.     The plaintiff also contends that there is an unresolved inconsistency between the VE's testimony and the DOT regarding the frequency of overhead reaching required by the jobs the law judge found that the plaintiff could perform. Specifically, the law judge determined that the plaintiff was limited to "occasionally reaching overhead with the right upper extremity," but the jobs he found that the plaintiff could perform are described in the DOT as involving "frequent reaching" (Doc. 18, pp. 16–17)

21

(emphasis added).[5]   This argument is meritless because the law judge addressed, and resolved, this apparent inconsistency.

The law judge presented two hypothetical questions to the vocational expert, both of which included that "this individual would have only occasional overhead reach with the right upper extremity" (Tr. 229–31). The vocational expert responded that this individual could perform jobs as a mail clerk, office helper, collator operator, lens inserter, stone setter and a stuffer (Tr. 230–31).

The law judge then asked the vocational expert (Tr. 233):

> Q: ... And your testimony, has it been consistent with the Dictionary of Occupational Titles, or have you had to rely on something outside of the DOT for your testimony?
> A: Both. I was consistent with the DOT, but I also deferred from it....
> Q: I know I asked some asymmetrical reaching kind of things where one extremity is limited, another extremity is not.
> A: Yes.
> Q: Is that something that requires you to apply outside knowledge?
> A: Yes.
> Q: Okay.
> A: <u>The DOT only addresses bilateral, so I've had to rely on my work experience, education, and job</u>

---

[5]"Reaching" means "extending the hands and arms in any direction." SSR 85-15, 1985 WL 56857 at *7. Thus, there is no distinction in the DOT for the frequency of reaching in different directions.

22

<u>analysis for some of the testimony today</u>.

(Tr. 233) (emphasis added).   Thus, the law judge identified an apparent inconsistency between the vocational expert's testimony and the DOT, and solicited testimony from the VE that resolved the inconsistency.

Furthermore, the law judge discussed in the decision the apparent inconsistency and its resolution (Tr. 34).  He stated (<u>id.</u>):

> According to the vocational expert, the <u>DOT</u> does not contemplate limitations involving asymmetrical reaching ... [VE] Ms. Stephens testified this aspect of her testimony was based on her education, training, and experience. Otherwise, and pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the <u>DOT</u>.

In sum, the vocational expert's testimony of the jobs the plaintiff could perform was based on a hypothetical question that comprises all of the claimant's impairments.  <u>See</u> <u>Jones</u> v. <u>Apfel</u>, 190 F.3d 1224, 1229 (11th Cir. 2019).   Additionally, the law judge resolved the apparent inconsistency between the VE's testimony and the DOT regarding the frequency of reaching, in accordance with <u>Washington</u> v. <u>Commissioner of Social Security</u>, <u>supra</u>, 906 F.3d 1353.  Therefore, the VE's testimony constitutes substantial evidence supporting the law judge's decision that the plaintiff could perform those jobs with a limitation to occasional overhead

23

reaching with the right upper extremity.  See Biestek v. Berryhill, supra, at

1155 (An ALJ may rely on the testimony of a vocational expert as substantial

evidence.).

The plaintiff challenges this finding, asserting the incoherent

argument that

> the VE explained the inconsistency with regards to
> the Plaintiff being more limited with the right
> upper extremity than with the [left], but the VE did
> not explain the further inconsistency with regards
> to the Plaintiff being limited to only occasional
> reaching overhead with the right upper extremity.

(Doc. 18, pp. 16–17).  As best as can be discerned, the plaintiff is arguing

that the law judge's question to the VE regarding "asymmetrical reaching ...

when one extremity is limited, another is not" was general and, therefore, the

vocational expert's answer did not identify the basis for opining that the

plaintiff could perform those jobs with a limitation to "occasional overhead

reaching with right extremity."  Such a contention is frivolous.

The law judge's question to the VE obviously concerned the

basis for the VE's opinion of the jobs the plaintiff could perform with a

limitation to occasional overhead reaching with the right extremity.  The VE

responded accordingly, stating that "[t]he DOT only addresses bilateral

[reaching], so I've had to rely on my work experience, education, and job

24

analysis for some of the <u>testimony today</u>" (Tr. 233).  Notably, plaintiff's counsel apparently was not unclear about this testimony, as he did not question the VE any further about the asymmetrical overhead reaching limitation (<u>see</u> Tr. 234–35).  Therefore, there is no cognizable basis for thinking that the VE's response that she relied on her work experience, education and job analysis did not apply to her testimony regarding occasional overhead reaching with the right extremity.[6]  Accordingly, this argument fails.

It is, therefore, upon consideration,

**ORDERED**:

That the decision of the Commissioner is hereby **AFFIRMED**. The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 20th day of January, 2021.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

---

[6]The plaintiff also argued further that the "ALJ also stated in his decision that he determined that the VE testimony was consistent with the DOT … but the ALJ failed to identify and resolve any of the several apparent inconsistencies between the VE testimony and the DOT as explained below" (Doc. 18, p. 13).  That contention is frivolous (<u>see</u> Tr. 34).